**In re Norman R. BLAIS, Esq.**

[696 A.2d 1231]

No. 97-061

May 1, 1997. Pursuant to the recommendation of the Professional Conduct Board filed February 18, 1997, and approval thereof, it is hereby ordered that Norman R. Blais, Esq. be publicly reprimanded for the reasons set forth on pages 3-10 of the board's Final Report attached

hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

## FINAL REPORT TO THE SUPREME COURT

### Facts

Respondent agreed to serve as local counsel in the defense of an interstate federal drug prosecution. Lead counsel was Larry Pozner of Colorado. The defendant and mutual client was Ozzie Preiss.

Respondent agreed to provide legal services on an hourly basis. In order to pay respondent's fee, Mr. Pozner transferred to him approximately $4,500.00 of Mr. Preiss' funds in May of 1992. On October 23, 1992, Mr. Pozner transferred another $5,000. By March of 1993, counsel were successful in their efforts to win transference of this prosecution to Colorado, although respondent continued to handle matters in Vermont into April of 1993.

Respondent's relationship with this defense was primarily through Mr. Pozner, who controlled the client account. Mr. Pozner did not demand a strict accounting of respondent's time. In fact, the October 1992 transfer of $5,000 was made after Mr. Pozner noted to respondent that respondent had put a considerable amount of effort into the case and had probably earned another $5,000.

The incidents which give rise to this disciplinary action began in March of 1993 when Mr. Preiss, having been convicted in the Colorado federal court, telephoned respondent demanding information about the $15,000 in fees which Mr. Pozner had given him. He wanted to know what respondent had done to earn those fees.

Respondent was initially startled. He knew he had received nearly $10,000 in fees, but recalled nothing about an additional $5,000. He wondered if perhaps he had misrecorded client funds or, worse

yet, office staff had embezzled them. He was also concerned that there might be some problem between Mr. Pozner and Mr. Preiss. Respondent was very concerned that Mr. Pozner would be accused of wrongdoing by Mr. Preiss and that he (respondent) would be caught in the middle of this dispute.

Respondent went over his books. His records did not show receipt of $15,000. As to what he had done to earn the fees, he had not kept a running account of the hours spent on Mr. Preiss' defense. However, he was able to go over his schedule and determine how much time he had spent on the case. He was able to determine that of the nearly $10,000 which Mr. Pozner had provided, defendant was entitled to a refund of $837.14.

On June 9, 1993, respondent wrote a check for this amount. He did not mail this check, however, or contact either Mr. Preiss or Mr. Pozner to discuss the issue.

On July 20, 1993, Mr. Pozner wrote to respondent about Mr. Preiss' often expressed hope that a refund of fees from respondent could be used to pay other legal bills owed in Colorado. Mr. Pozner wrote, "Please draw up an itemization for him or at least get him a check for any monies you have left in trust." Respondent did not answer.

On November 17, 1993, Mr. Preiss wrote to respondent. The letter stated, in pertinent part,

> I have asked you, through Larry Pozner, Esq., of the law firm of Pozner, Hutt & Kaplan, P.C. for a detailed account of hours and expenses that may have occurred when you allegedly represented me in certain criminal matters.
>
> It is my understanding that the law firm of Pozner, Hutt & Kaplan, P.C. in Denver, Colorado, transferred $15,000.00 to your trust account. Is that true?

If so, and at this time I have no reason to doubt that this in fact did occur, then, as we have asked so many times, **where did my money go?**

. . . .

Please give me answers to the following questions and/or requests.

a. A complete financial statement of where and to who my money was spent and why?
b. Billing hours: A complete statement.
c. Explain the relationship that existed or does exist between your law firm and the law firm of Pozner, Hutt & Kaplan, P.C. in Denver, Colorado.

Record, Exhibit 4 (emphasis in original).

Mr. Preiss asked for an answer by November 30, 1993. Respondent was still not certain about the $15,000 claim. He did not respond to the letter.

Mr. Preiss wrote again on December 14, 1993, noting that respondent's failure to answer had caused him to become truly concerned. He stated that he would take legal action against respondent and file a disciplinary complaint unless he heard from respondent by December 28, 1993. Again, respondent did not answer.

Mr. Preiss began federal court proceedings to try to collect the funds he felt were owed to him. In support of that effort, Mr. Pozner executed an affidavit on February 3, 1994, stating that he had sent respondent $14,412.14, and that he had requested on "numerous occasions . . . an itemization of his bill and an accounting of the money sent to him. In return, I have received neither phone calls nor letters from Mr. Blais."

Respondent received a copy of this affidavit. He then obtained counsel of his own to deal with this problem. Mr. Pozner eventually conceded that he had sent respondent approximately $9,400, not the $14,400 previously alleged. With the issue resolved of how much money Mr. Pozner had given to respondent, it was now clear to respondent that he owed Mr. Preiss only $837.14, the amount of the check he had issued the previous June but never sent. On March 23, 1994, respondent's counsel sent Mr. Pozner that check along with a ledger sheet showing the receipt and disbursement of Mr. Preiss' funds.

The ledger sheet does not set forth a description or itemization of the time which respondent spent on Mr. Preiss' defense. The ledger sheet does, however, comply with the requirements of DR 9-102(C) in the way in which it was maintained.

### Conclusions of Law

Respondent argued that his conduct satisfied the requirements of DR 9-102(B)(3) because he did, in fact, "[m]aintain complete records of all funds . . . of a client coming into [his] possession" by maintaining a ledger in accordance with DR 9-102(C). Bar counsel concedes as much.

The issue in this case concerns the second part of DR 9-102(B)(3). Did respondent "render appropriate accounts to [his] client regarding them"?

Respondent initially argued before the hearing panel that since he eventually did render an accounting of client funds to his client, albeit a year after the client asked for the information, he has complied with the letter of the law and that there is no clear and convincing evidence of a violation. Before this Board, respondent argued, inter alia, that a sanction no greater than private reprimand is warranted because respondent had understandable reasons for delaying. Respondent argued that it was appropriate to delay in rendering his accounting until the false accusation against him, i.e., that he had received $5,000 more than actually received, was resolved.

We cannot agree that it is appropriate to ignore multiple requests from an incarcerated, out-of-state client who asks his lawyer to explain to him (1) how much of the client's money the lawyer received and (2) what the lawyer did with the money. By simply ignoring this request for so many months, respondent failed to carry out his fiduciary duties to his client as required by DR 9-102(B)(3).

The client also asked for an hourly itemization of how respondent spent his time on the client's behalf. Respondent never provided this information to Mr. Preiss. Respondent did not keep records of his work on an hourly basis, although he was able to reconstruct his time in June of 1993, when he calculated that a refund was due of $837.14.

If respondent had agreed to handle this defense on a flat fee basis, his inability to provide an hourly breakdown of services rendered might be understandable. However, he agreed to provide services on an hourly basis. Respondent was obligated to provide a written breakdown of how those hours were spent. Without such an itemized statement of the services rendered, the client is unable to evaluate what services were rendered and whether the fees charged were reasonable.

Respondent argues that his relationship with out-of-state counsel was such that he felt that no hourly accounting was necessary. Indeed, the evidence shows that Mr. Pozner controlled the purse strings. Until the question of an accounting came up, Mr. Pozner gave respondent every indication that his fees were reasonable and appropriate. Respondent argues that his failure to track his time is understandable in light of Mr. Pozner's conduct and expectations.

Lead counsel's conduct does not justify respondent's failure to answer the client's request for an accounting. Once the client asked respondent for an accounting, it was incumbent upon respondent to make some attempt to respond. Ignoring him was inappropriate.

Respondent compounded the problem by also ignoring the disciplinary process. For twelve months he ignored multiple letters from bar counsel and the chair of this Board, asking for his cooperation with this investigation. There was no justifiable excuse for such conduct. It clearly violated DR 1-102(A)(5)(conduct prejudicial to the administration of justice) and A.O. 9, Rule 6D. See *In re Bailey*, 157 Vt. 424, 599 A.2d 1049 (1991).

### Sanction

We have engaged in considerable discussion as to what the appropriate sanction in this case should be. There is not a general consensus within the Board as to whether the failure to render appropriate accounting under the particular facts of this case, standing alone, mandates a public or a private sanction. However, we need not reach that issue. Respondent's conduct in failing to respond to bar counsel's multiple requests for information over a 12 month period, coupled with his failure to respond to the client for an equally lengthy time, places this case squarely in the realm of a public sanction.

We find no justification for respondent's "head in the sand" response to bar counsel's investigation, particularly in light of the fact that respondent has himself served as special bar counsel in the past and understands how the disciplinary system works. It is essentially a system of self-regulation that requires the cooperation of all members of the bar if it is going to work fairly and efficiently. There are times when failure to cooperate — even when the underlying complaint turns out to be a minor violation — requires public discipline. See, e.g., *In re Grochowski*, 687 A.2d 77 (R.I. 1996) (lawyer who was exonerated of two allegations of neglect was suspended for three months for failing to comply promptly

with bar counsel's request for information and for being dilatory in the closing of an estate); *In re Kove*, 478 N.Y.S.2d 191, 193 (App. Div. 1984) (lawyer who neglected estate would have been privately disciplined but instead was publicly censured for failure to cooperate with disciplinary proceedings); see generally, Annotation, *Failure to Co-operate with or Obey Disciplinary Authorities as Grounds for Disciplining Attorney — Modern Cases*, 37 A.L.R.4th 646 (1985).

Our recommendation is also supported by applicable Standards 4.43 and 6.23 of the ABA Standards for Imposing Lawyer Discipline. Respondent acted knowingly in neglecting his duties to the disciplinary system; he acted negligently in not carrying out his duty to account to his client. There was injury to the lawyer disciplinary system in that time and resources were wasted trying to obtain respondent's cooperation, cooperation which should have been extended as a matter of course.

Since Mr. Preiss eventually received his refund, there was no actual injury, although he had to resort to a law suit in order to obtain satisfaction. To the extent that Mr. Preiss remains interested in learning how the hourly fees were earned, there is injury to him in that his request for that information remains unanswered.

In aggravation, we find that respondent has been disciplined on one prior occasion and that he has substantial experience in the practice of law. In mitigation, respondent enjoys an excellent reputation in the legal community for honesty and integrity. He is well respected by many of his colleagues. None of these factors, however, is sufficient to move the recommended sanction above or below those cited by the Standards.